Filed 12/2/15  P. v. Latham CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B256284 |
| Plaintiff and Respondent, | (Los Angeles County |
| v. | Super. Ct. No. MA060321) |
| KEVIN LATHAM, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Lisa Chung, Judge.  Affirmed.

Jerry Smilowitz, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Scott A. Taryle and David A. Wildman, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury convicted defendant Kevin Latham of first degree burglary in violation of Penal Code section 459.[1] Defendant admitted having suffered a prior conviction for a serious felony under the Three Strikes law. (§§ 1170.12, subds. (a)-(d), 667, subds. (b)-(i), 667 subd. (a), 667.5, subd. (b).)

The trial court denied defendant's *Romero* motion[2] to strike his prior conviction and sentenced him to 12 years in prison for the burglary (the high term of six years doubled due to the prior strike). The court added a consecutive term of five years for defendant's prior serious felony conviction pursuant to section 667, subdivision (a)(1), for a total sentence of 17 years. The court struck the enhancement for a prior prison sentence. (§ 667.5, subd. (b).)

Defendant appeals on the grounds that: (1) the evidence presented by the prosecution was insufficient to prove defendant committed burglary; (2) the trial court prejudicially erred in failing to instruct the jury sua sponte on the limited nonhearsay use of the paper noting a license plate number; and (3) the trial court abused its discretion in failing to consider mitigating facts that were presented by defendant in his motion to strike his prior conviction.

## FACTS

**Prosecution Evidence**

Bernadette Scarfo Airuyuwa lived on Jojoba Terrace in Palmdale in 2013.[3] In January and early February of that year, she was visiting Africa, and she asked her son, James Lenaris, to check on her home every few days. When she left, Bernadette locked all windows and doors.

---

[1]  All further references to statutes are to the Penal Code unless stated otherwise.

[2]  *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).

[3]  Both counsel referred to Ms. Scarfo Airuyuwa by her first name at trial, and we will also refer to her by her first name.

When Bernadette returned on February 5, 2013, she noticed that a lot of items were missing throughout the house. She called sheriff's deputies, and a deputy arrived and went through the house with Bernadette and her son. The window to the formal dining room was broken open so that a person could put a hand through and open the window.

While Bernadette was waiting for the deputies outside her home, she noticed a dark green Cadillac driving slowly eastbound past her home. When Bernadette and her family looked at the driver, he accelerated. Bernadette identified defendant as the driver at trial. Bernadette's son, Lenaris, got in his car and chased him. Lenaris returned in about 15 minutes. Bernadette was not sure if she told the deputy about seeing defendant driving by.

Lenaris testified that he paid attention to the green Cadillac driving by because he noticed two of the letters in its license plate. These matched a license plate number he had been handed on a piece of paper by an unknown woman. Also, it seemed the driver was looking for something as he drove by. That is why Lenaris jumped in his car and followed him. Lenaris followed the Cadillac, which was going "really fast," into a cul de sac, Dolomite Avenue, where the Cadillac stopped in front of a house. Lenaris saw the driver, whom he later identified as defendant, get out and run toward the side of the house. Lenaris turned his car around and pointed at the man, saying "I got you" before driving off. Lenaris later gave the piece of paper bearing the license plate number to the sheriff's deputy and told him what he had seen.

Later that same evening, the deputies took Bernadette and Lenaris to a house for possible identification of property. It was the house where Lenaris had seen the Cadillac stop. Defendant was not present. At trial, the prosecutor showed Bernadette photographs of numerous items of property, which she identified as items that were taken from her home. She recovered the items she identified at trial, but other items were never returned.

Juan Hernandez lives across the street from Bernadette. Sometime between February 2 and February 5, 2013, he saw someone who looked like defendant outside

3

Bernadette's home. Hernandez also noticed a green Lincoln or Cadillac parked in Bernadette's driveway. He believed the photograph in People's exhibit 4A was similar to the vehicle he saw. Bernadette's front door was open and the lights in the house were on. Hernandez went over and asked defendant[4] what he was doing there. Defendant said he knew the residents and was helping the neighbor move certain things. Hernandez did not see any furniture or other objects5
 outside, but he did not look inside the car. He did not see defendant carrying anything or exiting the house. Hernandez returned home. Hernandez said he had seen defendant in the neighborhood before. He had never seen defendant at Bernadette's house before.

Hernandez believed Bernadette's daughter, Shadell, broke the dining room window before the burglary when her mother would not let her in, although he did not hear the glass breaking while he listened to their argument. He acknowledged he had not looked at the window and was not aware there was a fist-sized hole in it. He knew it was broken because he could see the plywood from his house before the burglary.

Deputy David Nisenhoff responded to the burglary call. He saw that the living room was almost vacant, and indentations in the carpet showed where heavy items had been. A window was broken. He was not sure, but he did not believe the window was boarded up. Deputy Nisenhoff was given the paper with the license plate number, and he linked the number to its registered owner using his department's resources. The owner was Christabel Pierce whose address was 2803 Dolomite Avenue in Palmdale. He went to the address and asked Pierce for consent to search the house. Upon entering, Deputy Nisenhoff immediately saw several items that Bernadette had described as having been taken. He confirmed that the vehicle in the garage, a 1994 green Cadillac sedan, bore the license plate number Lenaris had given him. It was the same vehicle depicted in People's

---

[4] Although Hernandez said at first that the man he saw "looked like" defendant, he identified the man he saw as defendant in court, and the prosecutor referred to the man as "defendant" throughout direct examination.

4

exhibit 4A. Bernadette and Lenaris came over and identified their property. Pierce was arrested for receiving stolen property.

Deputy Terra Porter arrested defendant on August 14, 2013, at the Dolomite Avenue house. She identified the booking and property record in People's exhibit 9 as the form she prepared for defendant. The information on the form was obtained from defendant's California driver's license or identification card and by asking defendant. The address given to Deputy Porter was 2803 Dolomite Avenue in Palmdale. She asked defendant to confirm the address, and he did so.

Karen France, a fingerprint technician, lifted fingerprints from Bernadette's residence, including from the sliding window in the dining room. The screen had been removed, and there was a fist-sized hole on the stationary pane. The window was not boarded up. Two prints were lifted from the outside of the window frame, one from the inside opening edge, and one from the glass. The latent fingerprint of a right index finger from the inside of the opening edge of the window was matched to defendant's fingerprint card. The fingerprint placed defendant inside the location.

**Defense Evidence**

Defendant testified that he had lived in Los Angeles for six years and went to Antelope Valley only on weekends and special occasions to visit his children and Pierce, who was their mother. Defendant did not live there. Defendant said he had no idea how long Pierce had lived at the Dolomite address. He sometimes stayed there but had never used that address as his own. He acknowledged a 2004 conviction for attempted robbery. He never drove Pierce's Cadillac because he had his own vehicle.

Defendant visited Shadell once or twice a week in Bernadette's house for "about a year" or "two or three months." He stated he had known her "four or five months," or "two or three months" in 2012. He never saw Bernadette in the house. He believed Shadell was Bernadette's daughter. He had opened the dining room window when he was smoking marijuana in Bernadette's house. He had never tried to get in the house by breaking the window.

5

On the date of the robbery, February 5, 2013, he was in Los Angeles doing "mechanic work" at his mother's house. He did not recall what he was doing on February 2, 3, or 4, except that he was in Los Angeles. Defendant said he knew Hernandez through Shadell. Defendant saw Hernandez "like three or four times a week," or "like every day." He would go to ask Hernandez if he had any marijuana. He knew Hernandez as "Carlos." They would sit back, smoke marijuana, and drink beer together. Defendant did not see or talk to Hernandez on February 5, 2013, because defendant was not at Bernadette's house as Hernandez had described. He had never seen the items taken from Bernadette's home.

**Rebuttal Evidence**

Shadell Liner is Bernadette's adopted daughter. She was 20 years old at the time of trial. She lived with Bernadette before Bernadette went to Africa but stayed with an aunt while Bernadette was away. She did not know defendant but had seen him around. Shadell went to school with Pierce's daughter. She was not defendant's friend and had never "hung out" with him. She had never let him into her house. She had never conversed with him. Shadell stated the dining room window was not broken or boarded up before her mother went to Africa. The board was put up after the fingerprint technician came. Shadell did not break that window nor any other window in the house. When her mother returned, there was a hole in the window next to the latch. Shadell did not go inside the house while Bernadette was in Africa.

Deputy Nisenhoff arrested defendant during a traffic stop in Palmdale on February 14, 2013. He was the driver and sole occupant of a Cadillac Deville with license plate 6UTY192—the same car depicted in People's exhibit 4A. Defendant gave a Los Angeles address as his residence.

Deputy Porter identified a copy of a certified DMV record bearing defendant's name in People's exhibit 12. It gave defendant's address as of January 17, 2013, as 2804 Dolomite Avenue, Palmdale. This was the address on defendant's driver's license, and defendant instructed Deputy Porter to correct the number to 2803 when she booked him.

6

**DISCUSSION**

## I. Sufficiency of the Evidence

Defendant contends there was insufficient evidence presented to sustain his conviction because he was not seen loading property into the Cadillac, there is no evidence he entered the home with the intent to commit theft, and there was no evidence he knew at any time that the property he saw in Pierce's home was stolen.

When determining whether the evidence was sufficient to sustain a criminal conviction, we review the entire record in the light most favorable to the judgment to determine "'whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]" (*People v. Hillhouse* (2002) 27 Cal.4th 469, 496.) "We draw all reasonable inferences in support of the judgment. [Citation.]" (*People v. Wader* (1993) 5 Cal.4th 610, 640.) Reversal is not warranted unless it appears "'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' [Citation.]" (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

There was ample evidence in support of defendant's burglary conviction. The jury was instructed on the difference between direct and circumstantial evidence and told that both types of evidence were acceptable to prove or disprove the elements of a charge, including intent, and that neither was entitled to any greater weight than the other. (CALCRIM Nos. 223, 225.) The jury was instructed that, when considering circumstantial evidence, it had to accept only reasonable conclusions. (CALCRIM No. 225.) We believe the jury reached a reasonable conclusion based on the facts given in evidence.

Bernadette testified that no one except her son had the keys to her home, and no one but he had permission to be in her home while she was in Africa. She arrived home to find many of her possessions missing. Bernadette's neighbor, Hernandez, saw defendant and the green Cadillac across the street at Bernadette's home between February 2 and 5, 2013. He had never seen him at that house before. The door of

Bernadette's home was open and the lights were on while defendant was there. While Bernadette waited for sheriff's deputies to arrive, she saw the green Cadillac pass by her house slowly and then accelerate. Lenaris noticed that the license number of the green car contained letters in a license plate number given him by a woman who had approached the family outside Bernadette's house. He followed the green Cadillac to a house on Dolomite Avenue and saw defendant walk or run to the side of the house. That same evening, deputies called at the house and saw several items belonging to Bernadette. The woman who lived in the house was defendant's girlfriend and the mother of his children. A fingerprint found on the inside of a broken window at Bernadette's house, which was the apparent point of entry, was identified as belonging to defendant. Fingerprint evidence is very strong evidence of identity and is generally sufficient on its own to identify a perpetrator. (*People v. Gardner* (1969) 71 Cal.2d 843, 849.)

Defendant's explanation for the damaging evidence against him in the prosecution's case-in-chief did little but bring his credibility into question. He said he visited Pierce nearly every weekend and sometimes during the week but then said he had no idea when she moved to the house on Dolomite Avenue. He said he had never driven the green Cadillac, but it was revealed he was arrested during a traffic stop while he was driving that car, and Hernandez saw defendant with the car at Bernadette's home. Defendant claimed his fingerprint was found on the interior of the window because he opened it when he was smoking marijuana in Bernadette's house at the invitation of her daughter. The jury, however, was entitled to draw its own conclusions as to defendant's credibility versus that of Shadell, and as to his version of how his fingerprint came to be on the window. (*People v. Gardner*, *supra*, 71 Cal.2d at p. 849.) Defendant acknowledged he had previously been convicted of attempted robbery.

Although one of defendant's principal arguments is that no one saw him moving things from the house, Hernandez, who had no apparent motive to lie, testified that when he confronted defendant about what he was doing at the house, defendant said he was helping the owner by moving some things. The jury was entitled to lend credibility to

8

Hernandez's testimony and draw the inference that defendant was moving items, or planned to move items, out of the house. As for Hernandez's testimony that the window was broken long before Bernadette's trip, it was up to the jury to decide whether his recollection was accurate. The fingerprint technician testified that the window was not boarded up. Finally, all of the stolen items recovered were found at the nearby home of Pierce, the mother of defendant's children.

Clearly, a jury could draw the reasonable inference from the totality of the circumstantial evidence that defendant burglarized Bernadette's home. Defendant's argument is without merit.

## II. Lack of Limiting Instruction on Relevance of Paper with License Plate Number

When Lenaris was asked during direct examination why he paid attention to the green Cadillac driving past his mother's home, he stated that he "noticed two letters of the license plate that matched a piece of paper [he] had with the license plate." At sidebar, defense counsel explained his hearsay objection to this testimony. The prosecutor stated that Lenaris would testify he was handed a piece of paper bearing a license plate number. The deputy also saw the paper and ran the license plate number, which led him to Pierce's home where the Cadillac pictured in People's exhibit 4A was parked. Defense counsel objected, stating that without the testimony of the person who made the notation about where they obtained the license plate number, the information was inadmissible. The prosecutor argued that the information was relevant to Lenaris's state of mind and what he did next, which was to follow the vehicle. Therefore, the person who wrote the notation was not needed. The court ruled, "It's not a hearsay issue. It's not going to the issue of the truth. So, for that reason, it's overruled."

Defendant contends that the probative value of the information on the piece of paper bearing the license plate number was greatly outweighed by its prejudicial effect. Defendant asserts that, although the trial court admitted the evidence of the paper and license plate number as nonhearsay evidence of Lenaris's state of mind, because the court did not instruct the jury that the paper could not be considered for the truth of the matter, the jury members (or at least one of them) would have assumed the woman was an

9

eyewitness. The piece of paper would be considered substantive evidence going to the involvement of the Cadillac and defendant in the commission of the burglary. According to defendant, his is "one of those exceptional cases where the trial court, in the absence of a request by a defendant, should have sua sponte given the jury a limiting instruction."

"'When evidence is admissible as to one party or for one purpose and is inadmissible as to another party or for another purpose, the court upon request shall restrict the evidence to its proper scope and instruct the jury accordingly.' (Evid. Code, § 355.) However, . . . 'absent a request by defendant, the trial court has no sua sponte duty to give a limiting instruction.' [Citations.]" (*People v. Smith* (2007) 40 Cal.4th 483, 516.)

We do not believe defendant's case is the "'"occasional extraordinary case"'" that is an exception to this rule. (See *People v. Cowan* (2010) 50 Cal.4th 401, 479-480.) Contrary to defendant's assertions, the evidence of the paper was neither "'"a dominant part of the evidence"'" against defendant nor was it "'"highly prejudicial and minimally relevant to any legitimate purpose."'" (*Ibid*.) As noted, the evidence of the license plate number was relevant to Lenaris's state of mind, for it explained his act of jumping in his car to follow the Cadillac.

We discussed in the preceding section of this opinion the substantial circumstantial evidence against defendant apart from the information on the piece of paper. The prosecutor told the jury in opening argument that this was "a fingerprint case." The prosecutor emphasized the importance of the fingerprint evidence in closing argument but did not even mention the notation on the paper. It was defense counsel who brought it up in his closing argument and asked what significance it had. Both Bernadette and Lenaris noticed the green Cadillac driving by slowly and then accelerating, and they found the driver's actions to be suspicious. Hernandez saw the green Cadillac parked in front of Bernadette's house while she was away, and the front door to the house was open while defendant was there. The stolen property was found in the house of defendant's girlfriend, where the green Cadillac was parked. There was abundant evidence that the green Cadillac and defendant were involved in the burglary.

10

The jury was unlikely to have regarded the unknown woman as an eyewitness, for the jury was not told why she gave the number to Lenaris or what she had seen. These factors indicate that defendant was not prejudiced by any failure of the trial court to give a limiting instruction sua sponte, and, even were we to consider it error, it was harmless. It is not reasonably probable that defendant would have received a more favorable result had the instruction been given. (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

## III.  Denial of *Romero* Motion

Defendant contends there were numerous points in his favor that the trial court apparently did not consider when it denied his *Romero* motion to strike his prior conviction enhancement. These favorable points include the fact that he was only 21 when he committed the strike offense in 2004, the strike conviction was remote, the sentencing court imposed a prison sentence of only 16 months, his probation officer said defendant reported monthly and was cooperative, and the officer said defendant was not an active gang member. Moreover, defendant points out, he accumulated only three convictions as an adult, and two of them (vandalism in 2002 and carrying a concealed dirk or dagger in 2012) were neither serious nor violent. In his motion, defendant also argued that the instant offense was not violent and no one was placed in danger.

At the hearing on the motion, defense counsel repeated the above-mentioned points in defendant's favor. The prosecutor countered the defense argument that defendant's 16-month sentence in the prior conviction indicated he was not considered a risk to society by offering the probation officer's report pertinent to that case. The report indicated the offense was charged as a violation of section 245, subdivision (a)(1) assault with a deadly weapon, as well as an attempted robbery. The victim was punched and kicked. He suffered abrasions, lacerations and a possible broken jaw and was taken to the hospital. The prosecutor also noted that defendant's record began when he was a juvenile. He had theft-related juvenile offenses, including burglary and an attempted robbery, and he was sent to the California Youth Authority (CYA). After his release he committed the strike offense and later felony vandalism. When he committed the instant offense he was on formal probation for the offense of carrying a dirk or dagger. The

11

prosecutor added that defendant had lied under oath. Moreover, the probation officer reported that, when Bernadette and her son came to court for Pierce's court appearance, the defendant committed a lewd act in front of the victim.

The defense argued that defendant's juvenile record was not relevant, and the probation report regarding the strike conviction was hearsay and written before adjudication of the offense. The most appropriate indication that the offense was not serious was the 16-month sentence. The trial court said it would take the matter under submission.

Bernadette was then given an opportunity to speak, and she described being harassed by defendant's family members. She said she had been attacked by Pierce[5] and her daughter. When she went to court for Pierce's criminal proceeding, defendant "came into the lobby of the court and started grabbing his groin up and down saying, 'Do you want some of this?'" She was living in fear, and she and her son had suffered costly damages to the home and lost materially and sentimentally valuable items.

In its ruling, the court noted it had to consider "the totality of defendant's background, character, prospects. That includes his entire criminal record. It includes the nature of the offense, the nature of the prior offense, any intervening criminal conduct as well. I was also in a position to hear the witnesses during the burglary trial. I've had an opportunity to review the probation report. . . . I have looked at his criminal record. It starts early as a juvenile, with burglary, attempted robbery where he went both to camp and then CYA." The court noted defendant's adult felony convictions and stated, "The current offense, it doesn't have the violence as, say, a home invasion robbery, but it is very invasive, and I think that is clearly evident in how it has affected the victim in this case. The court has to consider the protection of society. Based on how the defendant testified and his demeanor, I don't see any particular remorse." The court, based on those reasons and in the interest of justice, denied the motion.

---

[5]     Bernadette pointed to someone and said "this young lady right here." The prosecutor had previously mentioned that Pierce was in the courtroom.

12

The record reveals that the trial court fully considered all the proffered mitigation. A trial court has no obligation to make an express statement of reasons regarding factors that might be considered mitigating in a sentencing proceeding. Unless the record affirmatively indicates to the contrary, a trial court is presumed to have considered all relevant criteria, including any mitigating factors. (See *People v. Holguin* (1989) 213 Cal.App.3d 1308, 1317-1318.) The court below stated to defense counsel that it would take the matter under submission. The failure of the trial court to expressly comment on the factors proffered by defense counsel in defendant's favor does not indicate that the trial court did not consider them. The trial court had read and considered the probation report, which included the remarks by the probation officer that defendant cites as mitigating factors. Defendant omits the probation officer's comments that defendant was neither employed nor attending school, and he was delinquent on his probation account. The officer recommended that probation be revoked and sentence imposed. The trial court listened to the arguments of both parties. Although defendant asserts that an apparent lack of remorse should not be considered in a case where a defendant has testified, we believe that the trial court cited this factor in an effort to capture defendant's entire demeanor during trial. We conclude the trial court fully considered all pertinent factors in mitigation when considering defendant's *Romero* motion and did not abuse its discretion. (See *People v. Myers* (1999) 69 Cal.App.4th 305, 310 ["[w]here the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the [Three Strikes] law, we shall affirm the trial court's ruling . . ."].)

## DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


                                                 BOREN, P. J.

We concur:

      ASHMANN-GERST, J.         HOFFSTADT, J.